THE W. T. RAWLEIGH COMPANY *v.* TIFFIN.

4-5927                                        139 S. W. 2d 252

Opinion delivered April 22, 1940.

*Mark E. Woolsey* and *R. S. Wilson,* for appellant.

GRIFFIN SMITH, C. J.   We determine whether there was substantial evidence to sustain appellee Chas. Tiffin's claim, asserted through cross-complaint, that he was damaged $500 by action of appellant.

Tiffin, in January, 1937, renewed his contract with appellant for distribution of its products. It was contemplated that Tiffin should purchase at wholesale prices, "on time." Either party had the right to terminate the contract by written notice. Accounts due appellant matured upon termination of the contract, but in any event were payable not later than December 31, 1937.

Upon termination of the contract appellant's obligation was to purchase from Tiffin at current wholesale prices all products undisposed of. There was the condi-

tion that such goods should be returned promptly by prepaid freight to point designated by appellant. Appellant was permitted to charge five per cent. to cover cost of receiving, overhauling, and inspecting. By its terms the contract created the relationship of buyer and seller as distinguished from principal and agent, and "the buyer is in business for himself and has the exclusive right to determine where, at what price, and upon what terms and conditions he shall sell the products." It was further agreed that any sales promotion or service letters or bulletins, advertising matter, or other literature appellant might send Tiffin should not change the relationship.[1]

Additional provisions related to suretyship. Robert Meadors and S. W. Warfield were sued as sureties, the complaint alleging that Tiffin owed $512.33.

The answer was a general denial of the indebtedness. By way of cross-complaint it was charged that appellant had violated the terms of § 3 of the contract by refusing to accept products held in stock by cross-complainant when the contract was terminated; also, that the contract had been violated by appellant in "continually suggesting, ordering and demanding that appellee sell his products in certain territory, at certain prices, and on certain terms." The damage alleged was $500.

### OTHER FACTS—AND OPINION

Tiffin began selling W. T. Rawleigh products in 1928. Contracts were renewed annually. He testified that at first he sold in the northern part of Franklin county; that in 1937 he was denied permission to sell elsewhere; that he fixed prices on most of the products, but some came with the price stamped on the container; and that the company constantly sent bulletins and instructions on "how to sell and at what price." One such bul-

[1] In respect of advertising matter, etc., the contract provided that the fact of supplying such should not be considered as "orders, instructions, or directions, but only suggestive, educational, and advisory (which the buyer may or may not follow as he may choose) and shall not alter, change or modify this contract in any way; it being agreed and understood that if and when this contract is accepted by the seller, it shall constitute and be the sole, only and entire agreement between all parties hereto, and that it can only be changed or modified by the agreement and consent of both parties in writing."

letin was entitled: ''Why it is best to follow company recommendations.''[2]

Tiffin testified he had a conversation with J. A. Laws[3] relative to enlargement of his territory; that he wanted to sell in Madison county, and that Laws told him he would not be allowed to work there. A further statement was that Laws directed medicines to be left with prospective customers ''on time and trial—he said that was the only way a dealer could succeed.'' When asked on cross-examination if he disobeyed the so-called instructions, Tiffin replied: '' I disobeyed these instructions every time I thought I could get by with it.''

Although Tiffin testified he was not indebted to appellant, there was no denial of any item in the account. The assertion, therefore, was a mere conclusion apparently predicated upon a theory that damages would offset appellant's claim.

The record fails to disclose that appellant breached its contract. Tiffin was not limited to any territory. If it be conceded that Laws refused to sanction sales in Madison county, the answer is that Tiffin owned the products and had a right to sell where he pleased. The only penalty appellant could inflict would be a refusal to renew the contract in 1938. It is not alleged there was any such threat. But, even conceding an implication, appellant was under no obligation beyond the 1937 agreement. Nor does Tiffin testify that when merchandise was received from time to time he complained because

---

[2] The bulletin contained the following: "Our records for fair dealings over a number of years, as well as the progress [made during this time] should make it plain for you to see that you should place your trust in the company and the recommendations we make. When you realize that practically all localities are alike, that they all have nearly the same classes and types of people, and that they all have their problems, you will give less attention to the 'where' of the locality and spend more of your time on the 'how' of building up a large and profitable business. We all make mistakes, but there is a difference between the dealer who sees his mistakes and corrects them, and the fellow who is hard-headed, tight-fisted, unreasonable, short-sighted and stubborn."

[3] Laws was admitted agent of appellant. August 4, 1937, he wrote Tiffin: "Since you have refused to take up your unpaid check or make further payments on your account, I will return to Memphis tomorrow and terminate your contract by written notice on Saturday, August 7, unless you have changed your mind since Mr. Woolsey and I saw you at your home. Your contract provides that we will purchase your products if they are returned promptly by prepaid freight. You told me you had only about $25 worth left, but if you wish to return them to Memphis for credit you may do so and they will be accepted and credit issued according to contract. . . . Please let me know if you wish to return your stock for credit."

prices were printed on certain containers. It is possible —even probable—that Laws, in his zeal to create a demand for Rawleigh products, exerted high-pressure salesmanship and convinced Tiffin the latter's interests would be best served by following suggestions. This he had a legal right to do. Tiffin was not required to accede to any of Laws' methods. Tiffin owned the merchandise, and this is true whether he paid for it or bought it on credit. The contract of suretyship was designed by appellant to afford financial protection, and prompt payment was not a matter of immediate concern.

It is unfortunate that well-meaning and obliging sureties miscalculated and must have judgments returned against them. The contract contained this paragraph: "The sureties are entitled upon request at any time to a statement of buyer's account." Their recourse, however, is against Tiffin.

There was no evidence upon which a judgment for damages could be predicated: The merchandise account stands unimpeached.

The judgment for $500 is reversed and the cause dismissed. Judgment is given here for $512.33, with interest as asked in the complaint.